Thomas C. THOMAS, Plaintiff-Appellant,

v.

UNITED STATES of America, Defendant-Appellee.

No. 75–1215.

United States Court of Appeals, Fifth Circuit.

May 14, 1976.

Jerry Lastelick, Jeffrey F. Murray, Dallas, Tex., for plaintiff-appellant.

Frank D. McCown, U. S. Atty., Ft. Worth, Tex., Martha Joe Stroud, Asst. U. S. Atty., Dallas, Tex., Scott P. Crampton, Asst. Atty. Gen., Elmer J. Kelsey, Gilbert E. Andrews, Acting Chief, Appellate Sec., James E. Crowe, Jr., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before DYER and CLARK, Circuit Judges, and KRAFT *, District Judge.

KRAFT, District Judge:

This appeal presents this question: Did the district court, in its choice of sanctions available under F.R.C.P. 37(b)(2)(A)(B)(C), abuse its discretion by ordering dismissal of taxpayer's refund action and the entry of judgment against the taxpayer on the government's counterclaim? Our affirmative answer obliges us to reverse.

The chronology of the relevant facts is as follows: On February 1, 1973, Thomas C. Thomas (taxpayer) and others were arrested by Dallas, Texas police officers, charged with engaging in an unlawful gambling operation. On the basis of seized records furnished to Internal Revenue Service (I.R. S.), the Commissioner, on February 2, 1973, made a jeopardy assessment of $14,901.98 for taxes and interest against the taxpayer for delinquent wagering excise and occupational taxes for ten monthly periods between November, 1971 and January, 1973.

* Senior District Judge of the Eastern District of Pennsylvania, sitting by designation.

After the I.R.S., by seizure, collected a part of the assessment, the taxpayer filed a timely claim for refund thereof, which was denied.

The taxpayer, on November 5, 1973, filed his action for refund in the district court, claiming, inter alia, that the taxes were illegally or erroneously assessed; that the records seized by the police belonged to others and that the assessment was founded on the erroneous assumption that similar betting transactions had occurred during other periods. The government's answer denied that the assessment was illegal or erroneous and asserted insufficient knowledge to form a belief that the records belonged to others.

The government, on January 31, 1974 filed and served upon the taxpayer twenty-one written interrogatories, which included specific questions about the taxpayer's alleged wagering activities and the sources of all income during the pertinent periods. On June 17, 1974, with taxpayer's consent, the government filed an amended answer as well as a counterclaim for the unpaid portion of the assessment. The taxpayer filed no timely objections or answers to the interrogatories and, on June 19, 1974, the government filed a motion to compel taxpayer to answer. Seven days later the taxpayer filed answers to eleven interrogatories, but declined to answer the other ten on the grounds that (a) his answers "may tend to incriminate" him and (b) the wagering done by him was "as a bettor, not as a bookmaker, agent or lay-off man" and that disclosure of the bookmakers with whom he bet would probably "be dangerous and injurious to his health." The government promptly filed another motion to compel taxpayer to answer the ten unanswered interrogatories. The taxpayer interposed no application for a protective order under F.R.C.P. 26(c) and, on July 9, 1974, the district court, granting the government's motion, ordered the taxpayer to answer the interrogatories within ten days. The taxpayer did not obey the order and the government, on July 25, 1974, moved specifically for dismissal of taxpayer's action and for judgment on its counterclaim under F.R.C.P. 37(b)(2)(C). The government later filed a memorandum in support of its motion to which the taxpayer responded with his opposing memorandum. On November 12, 1974, the district court, holding that the taxpayer must make a choice between his silence and his lawsuit, entered an order dismissing taxpayer's action with prejudice and entering judgment for the government on its counterclaim.

■ Taxpayer's first contention that the district court should have held an evidentiary hearing and/or heard oral argument on the motion is without merit. All the essential facts were of record. Opportunity to file supporting and opposing memoranda was afforded and exercised.

The portion of F.R.C.P. 37(b)(2), operative here, provides: "If a party . . . fails to obey an order to provide . . . discovery, . . . the court . . . may make such orders in regard to the failure as are just, and among others the following:

"(A) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(B) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

(C) An order . . . staying further proceedings until the order is obeyed, or dismissing the action . . . or rendering a judgment by default against the disobedient party;"

In *Urban v. United States* (5 Cir. 1971) 445 F.2d 641 we held that assessments of wagering excise and occupational taxes were not unconstitutional on self-incrimination grounds, and we proceed, therefore, to consider whether the order of the district court, adopting one of the sanctions appearing in the rule, was, in the circumstances also *just.*

■ Dismissal of the disobedient party's action with prejudice is a sanction of last resort, applicable only in extreme circumstances: *Bon Air Hotel, Inc. v. Time, Inc.* (5 Cir. 1967) 376 F.2d 118. The broad discretion of the district court is not unlimited. Consideration must be given to such factors as good faith, willful disobedience, gross indifference to the rights of the adverse party, deliberate callousness or gross negligence. *Dorsey v. Academy Moving & Storage, Inc.* (5 Cir. 1970) 423 F.2d 858.

The government's brief contains this illuminating and, perhaps, significant statement:[1] *"Typically,* when a taxpayer sues for refund of the excise taxes paid, the Government files interrogatories . . . similar to those in the instant case. In those cases where the interrogatories are deemed to be the proper subject of discovery and the taxpayer refuses to comply with an order compelling discovery, *the position typically taken by the courts* reaching this question *is* to respect the taxpayer's claim of constitutional privilege, but *to require that the taxpayer choose between maintaining his silence or his lawsuit."* (emphasis supplied) Noteworthy, too, is the fact that the government did not request such sanction as the district court might deem appropriate, but sought only and precisely the order which the district court entered.

However, the teaching of *Societe Internationale v. Rogers,* 357 U.S. 197, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) is that the provisions of F.R.C.P. 37 "must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law," and that "there are constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the merits of his cause."

■ Unquestionably the government has a strong interest in maintaining the validity of its assessment, but that interest does not entitle it to calculate its assessment in any manner its agents choose, secure in the knowledge that the assessment will be unchallenged, because the government has devised a way to procure automatic dismissal of the taxpayer's suit for wagering tax refund, as well as a default judgment against the taxpayer on the government's counterclaim, by the simple device of filing interrogatories framed to oblige the taxpayer to incriminate himself or forego his lawsuit. To add to the present certainties of death and taxes the dismissal of every suit for wagering tax refund by every taxpayer who invokes his Fifth Amendment right may be akin to forfeiture. See *Boyd v. United States* 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886); *United States v. United States Coin & Currency,* 401 U.S. 715, 91 S.Ct. 1041, 28 L.Ed.2d 434 (1971).

■ The real thrust of appellant taxpayer's argument is that no sanction imposed for his failure to obey the district court's order should deprive him of his property without due process, when his disobedience is based on his exercise of his constitutional privilege against self-incrimination; and that, whatever sanction is imposed should, at least, accord him the opportunity to attempt to meet his burden of proof of showing that the instant assessment was, as he claims, erroneous, arbitrary and capricious. To that opportunity, we think, the taxpayer was justly entitled and of it was unjustly deprived. Justice should not countenance the unilateral calculation and assessment of a tax with its strong presumption of correctness, under which the taxpayer's assets are seized and/or liened, unless the taxpayer, shouldering his burden of proof in a judicial proceeding, is free to challenge its legality, its basis, its computation, its correctness; otherwise abuses tend to develop and become ingrained. See *Lucia v. United States* (5 Cir. 1973) 474 F.2d 565; *Pizzarello v. United States* (2 Cir. 1969) 408 F.2d 579.

In a similar situation the United States Court of Appeals for the Fourth Circuit reversed the judgment of the district court and, in exercise of its supervisory powers, established a procedure providing for a stay

1. Government brief, pp. 7, 8.

of further proceedings until the government obtained immunity for the taxpayer or until all applicable statutes of limitation have run. *Shaffer v. United States* (4 Cir. 1975) 528 F.2d 920. A like result was attained in *Iannelli v. Long* (3 Cir. 1973) 487 F.2d 317, upon the premise that a stay of proceedings, until the conclusion of related criminal proceedings or until all applicable periods of limitation had run, would suffice.

Since F.R.C.P. 37 gives wide discretion to the district court and, clearly, does not limit that court to the orders therein described, we see no need for the exercise of our supervisory power to adopt a specific procedure. The wisdom of a Solomon is scarcely required to frame an order that will be just in the circumstances of this case, whether resort is had to the categories of orders delineated in Rule 37(b)(2)(A)(B)(C) or to others not mentioned, but apparent to a reflective judicial mind.

The judgments below are reversed and the record remanded for further proceedings consistent herewith.

Reversed and remanded.