In re LIQUID CARBONIC TRUCK DRIVERS CHEMICAL POISONING LITIGATION M. D. L. DOCKET NO. 252.

Rodney J. STRAIN et al.,
Plaintiffs-Appellants,

Roger Moran et al., Plaintiffs,

v.

Kenneth TURNER et al.,
Defendants-Appellees.

No. 77–3056
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 22, 1978.

Bernard S. Smith, Covington, La., for plaintiffs-appellants.

* Rule 18, 5 Cir.; see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Edward J. Rice, Jr., Lloyd W. Hayes, New Orleans, La., for Turner, Heilgeist, Trautwein, Wakolbinger, Witte, Goken, Esposito, Ziebell & Aetna.

Jerry L. Saporito, Metairie, La., for Process Engineering, Inc.

Rodney Strain, pro se.

Charles Strain, pro se.

Leonard Strain, pro se.

Carl Martin, pro se.

Dennis Morris, pro se.

Before BROWN, Chief Judge, COLEMAN and VANCE, Circuit Judges.

COLEMAN, Circuit Judge.

The appellants appeal an order by the district court dismissing their cases from a consolidated multi-party tort suit. They fervently argue that the district judge abused his discretion in ordering their cases dismissed on the basis of a single failure of their counsel to file answers to defendants/appellees' interrogatories on time. After a review of the briefs and the record, we find that there was much more leading to the dismissal than this single episode and that the district court's action cannot be characterized as an abuse of discretion. Therefore, we affirm the order of the lower court.

To appreciate fully the patience, and fortitude of the district judge in dealing with appellants, a brief review of the background of the case is necessary. The five appellants were previously employed as truck drivers for Liquid Carbonic Corporation. Claiming injuries from chemical poisoning sustained during loading, unloading, and delivery of carbon monoxide to various chemical companies, the five appellants and eight other drivers filed two sets of lawsuits late in 1974. In one set of complaints, appellants sued ten individual officers and employees of Liquid Carbonic Corporation and Aetna Casualty and Surety Company (the insurer of Liquid Carbonic). Additional defendants included corporate owners of the tractor trailers, the manufacturer of the tractor trailers (Process Engineering, Inc.), and several chemical companies where appellants made deliveries. In a second set of complaints, appellants sued Liquid Carbonic and Aetna for alleged breach of an oral employment contract and for hospital and medical expenses.

Since several of the complaints were filed in other districts, the matters were brought before the multi-district litigation panel in Washington, D. C., and all were consolidated, at least for pre-trial proceedings, in the Eastern District of Louisiana. Pursuant to the rules and guidelines set forth in the Manual for Complex Litigation, in December, 1976, the court entered a Practice and Procedure Order giving schedules and deadlines for handling various phases of the discovery and pre-trial proceedings.

All plaintiffs settled with the chemical company defendants in the spring and summer of 1977. This left the thirteen plaintiffs aligned against the Liquid Carbonic interests and Process Engineering. Thereafter, Liquid Carbonic and Process Engineering settled with the four plaintiffs not represented by Louis Koerner, attorney for the nine remaining plaintiffs, including the five appellants.

On August 17, 1977, after continued and consistent failure on the part of the five appellants to follow court orders, the district court dismissed their lawsuits. The other four Koerner plaintiffs were not dismissed because the Judge felt they had at least tried to comply with the court orders and to cooperate with their attorney. On August 24, 1977, the district court denied appellants' motion for reinstatement. Appellants filed this appeal pro se in April, 1978, apparently having fired Koerner and having failed to hire a new attorney.

The dismissal of appellants' cases was not a sudden occurrence, nor was it brought about by one specific act, or more correctly, failure to act. In truth, the District Judge bent over backward in dealing with appellants, extending numerous deadlines and giving one reprieve after another.

At a January 12, 1977, conference the Judge ordered that certain depositions, which had been taken several months before, be transcribed by January 31, 1977. This was never done by appellants. In early May both Liquid Carbonic and Process Engineering filed motions to dismiss because of appellants' failure to comply with numerous discovery orders. These motions were set for hearing on June 15, 1977, before United States Magistrate Kenneth Hughes. In the meantime the five appellants attempted to discharge their attorney, Koerner, and to find new counsel. At a conference with the Court on this matter, the appellants were told that they could retain new counsel if they wished, but any counsel brought into the case would have to be ready for trial as set on August 29, 1977. After some investigation, it developed that appellants could not find an attorney who was either willing to shoulder the financial burden involved in the case or prepare the case in time for the trial. At this point appellants seemingly resigned themselves to representation by Koerner.

On June 15 Magistrate Hughes heard appellees' motion to dismiss based on failures of Koerner's plaintiffs to answer interrogatories and failure of two of Koerner's plaintiffs to submit to court-ordered medical examinations. The magistrate ordered that these two failures be cured by July 1 or the cases would be dismissed. On July 1 Koerner arranged with opposing counsel for an informal extension of the deadline to July 5. He did file the answers on July 5; however, he gave them to the appellees only on July 11. On July 14 the magistrate submitted a follow-up report to the Judge recommending dismissal of the cases for failure to comply with his orders on time.

Since the appellees found the answers to the interrogatories vague and incomplete, another conference with the magistrate was held on July 20 to discuss the problem. The conference was removed to the Judge's chambers where it was determined that Koerner would submit new answers for review by Magistrate Hughes.

On August 3 in accordance with earlier orders, all exhibits in the case were to be brought to chambers for examination by opposing counsel. Counsel for appellees arrived that day with all exhibits neatly ordered and labeled as had been stipulated. Koerner, however, had left town the day before on an emergency and had apparently forgotten the marshalling order. His associate, who knew virtually nothing about the case, valiantly attempted to assemble some sort of presentation of Koerner's exhibits. The results of his labors were confusing at best and included a large box full of close to a thousand sheets of miscellaneous unrelated papers marked as a single exhibit and a set of personal photographs totally unrelated to the case.

Meanwhile, the magistrate had reviewed Koerner's latest set of answers and found "no substantial improvement over the original answers". On August 5 he recommended that the case be continued, because he believed the defendants should not be compelled to go to trial on August 29 without further discovery.

Another hearing before the Court was called on August 10 to consider the July 14 recommendation of the magistrate that Koerner's plaintiffs' cases be dismissed. Again, appellants were given a reprieve and an extension. The Judge said that Koerner had until 5:00 p. m. on August 15 to submit satisfactory answers to the interrogatories; if not, the case would be dismissed.

The pre-trial conference was set for 9:00 a. m. on August 15. Koerner called in after nine o'clock to explain that he was running late because he was xeroxing the pre-trial order. When he finally did arrive, no agreement on the pre-trial order could be reached. Therefore, all counsel were instructed to appear before the Judge on August 17 at 10:00 a. m. with an agreeable pre-trial order and to be prepared for a discussion of a possible continuance or dismissal of the case.

At 5:15 on August 15 counsel for the defendants telephoned the Judge to let him know that Koerner had not supplied revised answers to the interrogatories. Apparently, the new answers were supplied on Au-

gust 16th or 17th. This dilatory inaction was the last straw. At the August 17 hearing Judge Sear ruled that the cases of the five appellants be dismissed because of their repeated willful disregard of his orders. With his order the Judge included a lengthy and detailed recapitulation of the most obvious instances of misconduct in the case in order to preserve for the record his reasons for dismissal.

Throughout all these proceedings and hearings Koerner explained that his difficulties in compliance with the court orders were caused by the five appellants' refusal to cooperate with him. Contrary to appellants' contention that "[t]here is *no evidence* to document any disobedience, willful or otherwise, or bad faith in *appellants themselves* . . . ." (their emphasis), Koerner told the court that they contributed to the failure to answer interrogatories by refusing to speak to him or to answer his telephone calls over a period of several months while the interrogatories were outstanding. He indicated that the other four plaintiffs were cooperating with him. And in spite of all the problems which were aggravated by these five appellants' recalcitrance, Koerner made a good faith effort to protect their interests at the dismissal hearing on August 17.

We find, as other courts have found in similar cases, that additional evidence of the willfulness of appellants' disobedience is "mirrored in the record". *See DiGregorio v. First Rediscount Corporation,* 3 Cir. 1974, 506 F.2d 781, 788; *Diaz v. Southern Drilling Corporation,* 5 Cir. 1970, 427 F.2d 1118, 1126, *cert. denied,* 400 U.S. 878, 91 S.Ct. 118, 27 L.Ed.2d 115; *Affanato v. Merrill Bros.,* 1 Cir. 1977, 547 F.2d 138. It is important to note, also, that prior to dismissal Judge Sear had met appellants on several occasions, and therefore, was in an excellent position to scrutinize and evaluate their attitudes toward their attorney and the court. Appellants were present at many of the hearings and conferences, including the final one where they had an opportunity to testify on a request for reinstatement of their cases. Appellants' actions at all of these meetings could have provided an additional basis upon which the Judge could make a finding of willful disobedience.

■ Rule 37 of the Federal Rules of Civil Procedure authorizes the court to order dismissal of a party's claims for failure to obey discovery orders of the court. It is, however, the most extreme sanction provided for in the rule, and the Supreme Court has emphasized the necessity for cautious use of the rule:

> . . . Rule 37 should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial [discovery] order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.

*Societe Internationale Pour Participations Industrielles Et Commerciales v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958). This sanction should be exercised only in exceptional circumstances. *Thomas v. United States,* 5 Cir. 1976, 531 F.2d 746, 749.

The limitation on the use of this sanction applies to protect those who, through no fault of their own, are unable to comply with court orders. *Emerick v. Fenick Industries, Inc.,* 5 Cir. 1976, 539 F.2d 1379, 1381; *see also Thomas v. United States, supra; Dorsey v. Academy Moving and Storage,* 5 Cir. 1970, 423 F.2d 858, 861. It does *not* protect willful or bad faith noncompliance with court orders. The Supreme Court made this perfectly clear in *National Hockey League v. Metropolitan Hockey Club,* 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), a recent case involving facts very similar to the case at bar in which the Court reversed the Third Circuit ruling that the district court abused its discretion in dismissing an antitrust action because of repeated failure to timely answer written interrogatories. The Court quoted the district court's summary of the factual history of the discovery proceedings:

> "After seventeen months where crucial interrogatories remained substantially

unanswered despite numerous extensions granted at the eleventh hour and, in many instances, beyond the eleventh hour, and notwithstanding several admonitions by the Court and promises and commitments by the plaintiffs, the Court must and does conclude that the conduct of the plaintiffs demonstrates the callous disregard of responsibilities counsel owe to the Court and to their opponents. The practices of the plaintiffs exemplify flagrant bad faith when after being expressly directed to perform an act by a date certain, *viz.,* June 14, 1974, they failed to perform and compounded that noncompliance by waiting until five days afterwards before they filed any motions. Moreover, this action was taken in the face of warnings that their failure to provide certain information could result in the imposition of sanctions under Fed. R.Civ.P. 37. If the sanction of dismissal is not warranted by the circumstances of this case, then the Court can envisage no set of facts whereby that sanction should ever be applied." 427 U.S. at 640–641, 96 S.Ct. at 2779.

Under like circumstances we echoed the sentiments of the Court, above, in *Emerick v. Fenick Industries, Inc., supra,* with the following statement:

> . . . when a [party] demonstrates flagrant bad faith and callous disregard of its responsibilities, the district court's choice of the extreme sanction is not an abuse of discretion. 539 F.2d at 1381.

We have also said that while it is true that sanctions imposed in these situations should be "no more drastic than those actually required to protect the rights of other parties . . ., overleniency is to be avoided where it results in inadequate protection of discovery." *Diaz v. Southern Drilling Corporation, supra.*

■ From a review of the full record in this case, it is clear that the trial court did not abuse its discretion in dismissing the appellants' cases. For a protracted period of time, and even up until ten days before trial, appellants refused to respond to discovery orders, seriously prejudicing appellees in the preparation of their case. In view of this pattern of callous disregard of court orders by appellants, including failure to transcribe depositions, failure to submit to court-ordered medical examinations, repeated failure to file timely and complete answers to interrogatories, failure to marshall exhibits, and failure to file witness lists, no lesser sanction than dismissal would have been adequate to protect the integrity of the court or the rights of the appellees.

AFFIRMED.