See also, D.C., 83 F.R.D. 284.

Olin Billie BOOKER, Levon Hervey, Henry Smith, Henry Henderson, Jr., Edward Ray Frazier, George F. Stricklin, David Owens, Don Frazier, Franklin E. Stricklin, Joel Chrestman, Hughie James, Plaintiffs,

v.

Hon. William H. ANDERSON, Chancellor Judge of the Chancery Court of Lafayette Co., Buddy East, Sheriff of Lafayette Co., Champion Building Products, Division of Champion International Corp., formerly known as U. S. Plywood, International Woodworkers of America, AFL–CIO Representative, Walter Gorman, International Woodworkers of America, AFL–CIO Representative, Truman Reed, Defendants.

No. WC 77–96–S.

United States District Court, N. D. Mississippi, W. D.

Jan. 22, 1979.

Leonard McClellan, Alvin O. Chambliss, Jr., North Miss. Rural Legal Services, Oxford, Miss., for plaintiffs.

Will A. Hickman, S. T. Rayburn, Sumners, Hickman & Rayburn, Oxford, Miss., for Anderson, East, and Champion Bldg.

Lynn A. Agee, Gorman & Reed, Memphis, Tenn., for IWA, AFL–CIO.

Lynn-Marie Crider, Youngdahl, Larrison & Agee, Little Rock, Ark., for unions.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

### I. *Summary of Facts.*[1]

The 11-named plaintiffs[2] in this action are former employees of one of the defend-

---

1. This summary is taken from the pleadings in the record and from the testimony and evidence introduced at the hearing held on September 23, 1977, to consider plaintiffs' application for a temporary restraining order.

The defendants have attached various pleadings and documents to memoranda submitted to the court which are not filed in the official record maintained by the clerk. Of the attached papers, the court has considered the following pleadings and documents and will have them filed by the clerk:

Affidavit of Walter Gorman
Opinion and award of March 15, 1978, by Samuel J. Nicholas, Jr., Arbitrator and Umpire
Letter dated November 2, 1977, to Honorable Lynn Agee from John F. Harrington, Acting Regional Director of NLRB, Region 26.
Letter dated December 7, 1977, to Honorable Lynn Agee, from Robert C. Allen, Director, Office of Appeals, NLRB.

2. The plaintiffs are:

| | |
|---|---|
| Olin B. Booker, President, Local No. 5–376 | Don Frazier |
| Henry Smith, Vice-President, Local No. 5–376 | Edward Ray Frazier |
| Levon Hervey, Financial Secretary, Local No. 5–376 | Hughie James |
| Henry Henderson, Jr. | Franklin Stricklin |
| David A. Owens | Joel Chrestman |
| George F. Stricklin | |

In footnote 1 of the memorandum submitted by the Union Defendants in support of their motion to dismiss six of the plaintiffs (discussed in part VI, *infra*) the Union Defendants state that plaintiffs Edward Ray Frazier and Donald Frazier have filed letters in which they withdraw as plaintiffs. In footnote 2 of the same memorandum, the Union Defendants cite the deposition of Donald Frazier as the source of their information that plaintiff Levon Hervey died during the Winter of 1978.

The record contains a copy of a letter dated February 10, 1978, from Mr. Edward Ray Frazier and a copy of a letter dated March 2, 1978, from Donald Frazier. Both letters are addressed to Honorable Alvin O. Chambliss, counsel of record for plaintiffs and in each letter each Mr. Frazier informs Mr. Chambliss that he no longer is to represent him. After

ants in this case, Champion Building Products, Division of Champion International Corporation (Champion). Also named as defendants are: Honorable William H. Anderson, Chancellor Judge of the Chancery Court of Lafayette County, Mississippi; Buddy East, Sheriff of Lafayette County, Mississippi; International Woodworkers of America, AFL–CIO (IWA); International Woodworkers of America, Local 5–376 (Local No. 5–376); Charles Campbell, Regional President of IWA, Region 5; Walter Gorman, Regional Vice-President of IWA, Region 5; and Truman Reed, Regional Representative of Region 5 (hereafter defendants Champion, Anderson and East are collectively referred to as the "Local Defendants" and defendants IWA, Local No. 5–376, Campbell, Gorman and Reed are collec- tively referred to as the "Union Defendants").

On September 12, 1977, a labor dispute between defendant Champion and some of its employees developed at defendant Champion's plant in Lafayette County, Mississippi. The employees refused to work and began picketing at the plant to protest labor conditions. Some discussions were held between defendant Champion and the striking employees and the officers of Local No. 5–376, but the parties were not able to settle the dispute. On September 14, 1977, Champion filed an action against IWA, Local No. 5–376 and certain officials of the IWA and Local No. 5–376 in the Chancery Court of Lafayette County wherein it sought and received a temporary injunction enjoining the union and its members from continuing the strike.[3]  *Champion Building*

---

receiving each letter, Mr. Chambliss filed a motion to withdraw as counsel of record. On February 15, 1978, the court entered an order permitting Mr. Chambliss to withdraw as counsel for Mr. Edward Ray Frazier and on April 12, 1978, an order was entered permitting Mr. Chambliss' withdrawal as counsel for Mr. Donald Frazier.

On February 21, 1978, Mr. Edward Ray Frazier wrote a letter to Honorable Norman L. Gillespie, Clerk of the Court, which was filed on February 22, 1978, and stated:

I, Edward Ray Frazier wish to be excluded from the class of Olin B. Booker, in Civil Action No. WC 77–96–S.

On March 2, 1978, Mr. Donald C. Frazier wrote a letter to Honorable Norman L. Gillespie, Clerk of the court, which was filed on March 6, 1978, and stated:

I, Donald C. Frazier wish to be excluded from the class of Mr. Olin B. Booker, in Civil Action No. WC 77–96–S as of this date March 2, 1978.

The court will consider these letters as pro se requests to be dismissed as plaintiffs and will enter an order dismissing them without prejudice.

With regard to the death of plaintiff Levon Hervey and the effect of his death on any claims asserted by him the parties should determine if Fed.R.Civ.P. 25(a) is applicable and if it is, the procedures established therein should be followed.

3. Named as defendants in the Chancery Court suit were: IWA, Local No. 5–376, Charles Campbell, Walter Gorman, Truman Reed, Olin B. Booker, Henry Smith, Levon Hervey, David A. Owens, and the production and maintenance employees at Champion's plant who were represented by the IWA and Local No. 5–376.

The complaint alleged that a collective bargaining agreement was in existence between Champion and the union, that the agreement contained no-strike, grievance and arbitration provisions, that the union had violated these provisions by engaging in a strike beginning on September 12, 1977, and that plaintiff Champion was ready to comply with the grievance and arbitration procedure to settle the issues raised by the striking workers. To stop the strike, plaintiff asked for an ex parte temporary injunction and for a permanent injunction after a hearing.

On September 14, 1977, the Chancery Court issued ex parte a temporary injunction which reads in part:

[Y]ou . . . are hereby enjoined from continuing in effect the work stoppage and strike begun on or about Monday, September 12, 1977 at the Novoply plant and operation of Champion Building Products . . . in Lafayette County, Mississippi, and from enducing, encouraging, threatening, restraining, or coercing others to engage in said work stoppage and strike or otherwise interfering with the operation of Champion Building Products. . . . International Woodworkers of America AFL–CIO and International Woodworkers of America Local No. 5–376, its officers and agents are hereby directed to promptly notify its members to return to work and work in accordance with the contract between Champion Building Products . . . and International Woodworkers of America AFL–CIO and International Woodworkers of America Local No. 5–376, and to adjust any alleged grievance in accordance with the grievance and arbitration procedure in the agreement between

Products v. International Woodworkers of America, AFL–CIO, et al., No. A–7028 (Ch.Ct. Lafayette County, Miss., Sept. 14, 1977). When the striking employees did not return to work, Champion filed a petition in the chancery court seeking a citation of contempt against the striking employees for their refusal to obey the temporary injunction. The chancery court set a hearing on the petition for September 23, 1977, at 1:30 P.M.

On September 20, 1977, plaintiffs filed their complaint in this action. During the morning of September 23, 1977, this court held a hearing on plaintiffs' application for a temporary restraining order which sought, inter alia, an order prohibiting the enforcement of the temporary injunction issued by the Chancery Court of Lafayette County, Mississippi. After hearing testimony and argument from counsel, the court denied the application.

In the afternoon of September 23, 1977, the contempt show cause hearing was held in the Chancery Court of Lafayette County. Judge Anderson refused to find the striking employees in contempt and again ordered them to return to work. Also, on September 23, 1977, Champion discharged certain employees including the named plaintiffs in this action. All strike activities ceased on September 23, 1977, and all employees who were not terminated on that date returned to work on September 26, 1977. Since the ending of the strike no picketing, assembling, or other strike-related activities have occurred, no one has attempted to enforce the temporary injunction since the termination of the strike and no one has been arrested or threatened with arrest for strike-related activities.

Subsequently, the union filed charges with the National Labor Relations Board alleging that Champion's discharge of the striking employees violated the National Labor Relations Act, 29 U.S.C. §§ 151, et seq. On November 2, 1977, Mr. John F. Herrington, Acting Regional Director of the National Labor Relations Board, Region 26, informed counsel for the union that a finding had been made that the union's charges were without merit. The letter stated:

> The strike was not protected activity because a valid collective bargaining agreement with a grievance procedure and a no-strike clause were in effect, and there was no situation which would make a strike a protected strike in the face of the valid no-strike clause. The employees were therefore lawfully terminated because of their participation in the unprotected strike.

The union's appeal of Mr. Herrington's decision to the Office of the General Counsel of the National Labor Relations Board was denied and the union's counsel was informed of the denial in a letter dated December 7, 1977.

In accordance with the grievance procedure of the collective bargaining agreement then existing between Champion and Local No. 5–376, the parties submitted to arbitration a grievance by the union protesting the discharge of the striking employees. The arbitrator issued his opinion on March 15, 1978, wherein he found that under the terms of the collective bargaining agreement, the discharge of the employees was proper and therefore he denied the union's grievance.

Pending in this action are the following motions:

1. Union Defendants' motion to dismiss which was filed on September 1, 1978.

2. Local Defendants' motion to dismiss which was filed on September 8, 1978.

3. Union Defendants' renewed motion to dismiss which was filed on October 2, 1978.

---

Champion Building Products . . . and International Woodworkers of America AFL–CIO and International Woodworkers of America Local No. 5–376.

This temporary injunction to be in full force and effect until dissolved, or until a final hearing on the merits.

You and each of you are hereby notified not to violate the terms of this temporary injunction or any part thereof under penalty of contempt of court.

4. Union defendants' motion to dismiss plaintiffs Smith, Henderson, James, Chrestman, Franklin Stricklin, and George F. Stricklin, pursuant to Fed.R.Civ.P. 37(d) for failure of these plaintiffs to answer interrogatories as required by the court's order of July 26, 1978. The motion was filed on October 20, 1978.

Also pending are two pleadings by plaintiffs which seek reversal of an order entered on November 21, 1978, by the United States Magistrate.

## II. *Plaintiffs' Complaint.*

Plaintiffs ask the court to award them declaratory, injunctive and other equitable relief as well as their expenses and attorney fees and seek to prosecute this action as a class action pursuant to Fed.R.Civ.P. 23.[4] The complaint cites numerous federal statutes and constitutional provisions [5] apparently for the proposition that they provide plaintiffs with a cause of action against

defendants and the court's jurisdiction is invoked under several statutory provisions.[6] However, the major part of the complaint is devoted to asserting two general claims against the defendants which the court will refer to as the "civil rights" claim and the "labor law" claim.

In the "civil rights" claim, plaintiffs contend that some or all of the defendants have violated plaintiffs' constitutionally or statutorily protected civil rights [7] to engage in certain strike-related activities by (1) instituting the civil action in the Chancery Court of Lafayette County to enjoin plaintiffs' strike-related activities; (2) issuing the temporary injunction, and (3) arresting or threatening to arrest or threatening to hold in contempt those persons disobeying the temporary injunction. The complaint's prayer for relief asks the court to take certain action to correct these alleged violations.[8]

---

4. Plaintiffs seek to represent a class defined as follows:

[A]ll members of the International Woodworkers of America, Local No. 5–376 who have been and are engaged in lawful and peaceful activities, including meeting, peaceful assembly, picketing, and free speech, aimed at securing to the workers and/or union members of [Champion] their equal rights.

Plaintiffs' Complaint, ¶ 15.

5. The following federal statutes and federal constitutional provisions are cited in the complaint: Titles II, III and VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000a—2000a–6, §§ 2000b—2000b–3, §§ 2000e—2000e–17; Title I of the Civil Rights Act of 1968, 18 U.S.C. § 245(b); 42 U.S.C. § 1983; the First and Fourteenth Amendments to the Constitution of the United States.

In paragraph 2 of the complaint, which is captioned "Jurisdiction", plaintiffs list the following statutes, 29 U.S.C. § 158(b)(1)(A), (b)(2); 42 U.S.C. §§ 1981, 1982, 1983, 1985, 1988, and the following constitutional provisions, the First, Fourth, Fifth, Ninth, Tenth, Thirteenth and Fourteenth Amendments to the Constitution of the United States. Since none of these statutory and constitutional provisions are jurisdictional provisions, the court will assume that plaintiffs have cited the provisions for the purpose of asserting that a cause of action against the defendants exists under each of them.

6. Plaintiffs allege that the court has jurisdiction of this case pursuant to 28 U.S.C. §§ 1331, 1337, 1343(3), (4).

7. In the civil rights claim federal jurisdiction is presumably invoked under 28 U.S.C. §§ 1331, 1343(3), (4) for causes of action apparently accruing under 42 U.S.C. §§ 1983, 1985 and the First and Fourteenth Amendments to the Constitution of the United States. Declaratory relief is sought under 28 U.S.C. §§ 2201, 2202.

8. Plaintiffs ask the court to order the following:

1. To declare that plaintiffs have the right under the First and Fourteenth Amendments to the United States Constitution to picket at defendant Champion's plant to protest the labor conditions;

2. To enjoin the defendants from interfering with plaintiffs' right to protest labor conditions at defendant Champion's plant;

3. To enjoin the defendants from enforcing those portions of the temporary injunction issued by the Chancery Court of Lafayette County and from seeking further injunctive relief from that court which would interfere with plaintiffs' right to lawfully protest the labor conditions at defendant Champion's plant; and

4. To enjoin defendant East from arresting plaintiffs for violating the temporary injunction issued by the Chancery Court of Lafayette County and to enjoin Honorable Will Hickman and Honorable S. T. Rayburn, counsel for the Local Defendants, from prosecuting those plaintiffs who violate the temporary injunction.

The "labor law" claim is more difficult to understand because the plaintiffs have not centrally and clearly set forth their allegations, the relief sought and the statute or statutes under which they are proceeding. Scattered throughout the complaint are general allegations against defendants Champion and the Union Defendants. For example, paragraphs 19, 23 and 24 appear to be charging the Union Defendants with failure to fairly represent all the members of the union [9] while in paragraphs 24–28, plaintiffs allege that defendant Champion locked the gate to the plant on September 12, 1977, before the strike began and that defendant Champion would not allow the president of the union in the plant to meet with the employees and would not meet with any member or officer of Local 5–376 to discuss the alleged "lockout" or any of the union's other complaints. The complaint's prayer for relief does not contain any specific requests related to the "labor Law" claim. The only statement made in the complaint which can be construed as a request for relief for the "labor law" claim is found in paragraph 1 where plaintiffs "urge this court to look into the union's breach of the duty of fair representation." The court finds no request for relief for the allegations made against defendant Champion. As will be discussed in part III, *infra*, none of the statutes cited in the complaint, see note 5, *supra*, appear related to the "labor law" claim.

### III. *Union Defendants' Motion to Dismiss.*

This motion, filed pursuant to Fed.R. Civ.P. 12 seeks dismissal of the complaint on the grounds that the "civil rights" claim is moot and because the court lacks jurisdiction over the plaintiffs' other allegations.

### A. Mootness of Civil Rights Claim.

In an affidavit filed in support of the mootness argument, defendant Walter Gorman states that no charges were pursued against the striking employees who were arrested, that no strike activity has occurred since September 26, 1977, and since that date "no strike-related assemblies, petitions, protests, or attempts to enforce any back-to-work injunctions" have occurred. Plaintiffs have not filed an affidavit contesting Mr. Gorman's statements. Since the "civil rights" claim is based on the actions taken by the defendants to end the strike, including efforts to obtain and enforce the chancery court's temporary injunction, and since these activities ended long ago, the Union Defendants contend the "civil rights" claim is moot. The Labor Defendants cite *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Div. 998, et al. v. Wisconsin Employment Relations Board,* 340 U.S. 416, 71 S.Ct. 373, 95 L.Ed. 389 (1951) (hereafter *Amalgamated No. 330*), to support their argument. *Amalgamated No. 330* was a companion case to *Amalgamated Association of Street, Electric Railway & Motor Coach Employees of America, Div. 998, et al. v. Wisconsin Employment Relations Board,* 340 U.S. 383, 71 S.Ct. 359, 95 L.Ed. 364 (1951) (hereafter *Amalgamated No. 329*).

Both cases involve the same parties and arise out of a strike by the transit employees of the Milwaukee Electric Railway and Transport Company. After the strike was called, the Wisconsin Employment Relations Board, acting pursuant to the Wisconsin Public Utility Anti-Strike Law, filed suit in

---

**9.** Paragraph 19 names IWA and Local 5–376 as defendants and reads in part: "This union [sic] owe the members of the bargaining units they represent a judicially enforceable 'duty to exercise fairly the power conferred upon (the union) in behalf of all those for whom it acts, without hostile discrimination against them.'" The quotation contained in this sentence from paragraph 19, although not identified by plaintiffs, is from *Steele v. Louisville & Nashville R. R.,* 323 U.S. 192, 203, 65 S.Ct. 226, 89 L.Ed. 173, 183 (1944) which is the case where the United States Supreme Court first held that a union has a statutory duty to fairly represent all its members. Paragraph 23 reads in part, "the union members have been unable to get their representatives to protect their interest, rights and welfare with respect to this plant." In one part of paragraph 24, plaintiffs assert, "The employees on many occasions attempted to get the area union representatives to rectify the situation but they refused to take any steps in this regard."

Wisconsin Circuit Court against the union and officers representing the transit workers and asked the court to enjoin the strike. The circuit court first entered ex parte, a restraining order which the union complied with by calling off the strike. Later, the circuit court entered a final judgment which provided that the union and its officers were " 'perpetually restrained and enjoined from calling a strike . . . which would cause an interruption of the passenger service of the [transit company].' " *Amalgamated No. 329,* 340 U.S. at 385, 71 S.Ct. at 361, 95 L.Ed. at 371. The final judgment was affirmed by the Wisconsin Supreme Court and the union appealed to the United States Supreme Court. The appeal of this judgment was before the Supreme Court in *Amalgamated No. 329.*

After the strike had been postponed by the union, the Wisconsin Employment Relations Board, acting again pursuant to the Wisconsin Public Utility Anti-Strike Law, appointed arbitrators to decide the labor dispute. After the arbitrator's award was filed, the union petitioned the Wisconsin Circuit Court to review the award. The circuit court affirmed the award and the Wisconsin Supreme Court affirmed the circuit court. The affirmance of the arbitrator's award was appealed and was before the United States Supreme Court in *Amalgamated No. 330.*

The Wisconsin Employment Relations Board argued to the United States Supreme Court that No. 329 and No. 330 were moot. *Amalgamated No. 330,* 340 U.S. at 417 & n. 1, 71 S.Ct. at 374 & n. 1, 95 L.Ed. at 391 & n. 1.

Addressing the argument that the appeal in *Amalgamated No. 329* was moot, the Supreme Court held: "The injunction before us in No. 329 is 'perpetual' by its terms so that the action does not become moot even though the decree be obeyed." *Amalgamated No. 330,* 340 U.S. at 417 n. 1, 71 S.Ct. at 374, 95 L.Ed. 391 n. 1.

As to the argument that the appeal of the arbitrator's award in *Amalgamated No. 329* was moot, the Supreme Court stated:

The arbitration award became effective on April 11, 1949. Under the Wisconsin [Public Utility Anti-Strike Law], that award "shall continue effective for one year from that date," unless sooner terminated by agreement of the parties. . . . We are informed that this award was superseded by agreement, and, in any event, the one-year period has elapsed. There being no subject matter upon which the judgment of this Court can operate, the cause is moot.

*Amalgamated No. 330,* 340 U.S. at 418, 71 S.Ct. at 374–75, 95 L.Ed. at 391.

The temporary injunction issued by the Chancery Court of Lafayette County provides that it is "to be in full force and effect until dissolved, or until a final hearing on the merits." The record does not show that the injunction has been dissolved or that a hearing on the merits has been held. The court has been orally informed by the Chancery Clerk's Office of Lafayette County that the action is still pending. Following the reasoning and ruling of the Supreme Court in *Amalgamated No. 329,* the court finds that plaintiffs' "civil rights" cause of action is not moot because the temporary injunction remains in full force and effect. *See Bakery Sales Drivers Local Union No. 33 v. Wagshal,* 333 U.S. 437, 442, 68 S.Ct. 630, 632, 92 L.Ed. 792, 797 (1948).

**B. Jurisdiction Over Remaining Allegations.**

The Union Defendants' motion states that the "remaining allegations of the complaint [other than the "civil rights" claim] are not within the jurisdiction of the court." Although the complaint lists several statutes as providing plaintiffs with a cause of action, see note 5, *supra,* the Union Defendants' memorandum of authorities supporting this part of the motion, addresses only two causes of actions.

█ First, Union Defendants argue that plaintiffs do not state a cause of action against IWA for failure to fairly represent the members of Local No. 5–376 because the complaint does not allege that IWA by failing to represent its members has violat-

ed any statute whose violation may be adjudicated by the court. Liberally construing the complaint, plaintiffs have conceivably attempted to allege that all or some of the Union Defendants have breached the statutory duty to fairly represent all of the union members, but plaintiffs have failed to allege the statutory basis for this cause of action. Under the facts of this complaint, plaintiffs may be alleging a violation of 29 U.S.C. § 159, with the court's jurisdiction involved under 28 U.S.C. § 1337, *see Vaca v. Sipes,* 386 U.S. 171, 177, 87 S.Ct. 903, 909, 17 L.Ed.2d 842, 850 (1967); *Ford Motor Co. v. Huffman,* 345 U.S. 330, 332 n. 3, 337, 73 S.Ct. 681, 683 n. 3, 685, 97 L.Ed. 1048, 1054 n. 1, 1057 (1953); *Mumford v. Glover,* 503 F.2d 878, 882–83 (5th Cir. 1974), or plaintiffs may be asserting their claim for breach of duty to fairly represent all union members in connection with a claim under 29 U.S.C. § 185 against defendant Champion for breach of the collective bargaining agreement. *See Amalgamated Association of Street, etc., Employees of America v. Lockridge,* 403 U.S. 274, 299, 91 S.Ct. 1909, 1924, 29 L.Ed.2d 473, 490 (1971); *Vaca v. Sipes,* 386 U.S. 171, 183, 87 S.Ct. 903, 913, 17 L.Ed.2d 842, 854 (1967); *Lomax v. Armstrong Cork Co.,* 433 F.2d 1277, 1280–81 (5th Cir. 1970). Since 29 U.S.C. §§ 159, 185 are not cited in the complaint and since none of the other statutes cited in the complaint provide plaintiffs with a basis for their claim for breach of duty to fairly represent all union members, the court finds that plaintiffs have failed to state a claim against the Union Defendants for failure to fairly represent all union members. However, the court does not believe that plaintiffs' failure to plead the statutory basis for the breach of duty of fair representation claim warrants immediate dismissal of the claim without providing plaintiffs with an opportunity to amend the complaint and to properly state their claim. *See Czosek v. O'Mara,* 397 U.S. 25, 27, 90 S.Ct. 770, 772, 25 L.Ed.2d 21, 24 (1970); *Robinson v. Reed,* 566 F.2d 911, 913 (5th Cir. 1978). Plaintiffs will be given 15 days to amend the complaint to assert the statutory basis for the fair representation claim. If the complaint

is not amended the breach of duty of fair representation claim will be dismissed.

Second, the Union Defendants argue that this court is without jurisdiction to hear plaintiffs' allegation that the Union Defendants have violated 29 U.S.C. § 158(b)(1)(A) and (b)(2). To the extent that plaintiffs are asserting a claim under these subsections, the court finds that Union Defendants' motion to dismiss is well taken. These subsections define unfair labor practices for a labor organization and are to be enforced in accordance with the procedure established in 29 U.S.C. § 160. Under the ruling in *San Diego Building Trades Council v. Garman,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959), the National Labor Relations Board has exclusive jurisdiction over a complaint alleging violation of 29 U.S.C. § 158. Plaintiffs' claim that the defendants have violated 29 U.S.C. § 158(b)(1)(A) and (b)(2) will be dismissed.

To summarize the court's ruling on Union Defendants' motion to dismiss, the court finds (1) that the "civil rights" claim is not moot, (2) that plaintiffs' breach of duty of fair representation claim will be dismissed unless it is amended to assert the statutory basis for the claim, and (3) that the court does not have jurisdiction to decide the claim asserted under 29 U.S.C. § 158(b)(1)(A) and (b)(2).

**IV. *Local Defendants' Motion to Dismiss.***

The only basis for dismissal raised in the motion is mootness. In their memorandum Local Defendants argue that plaintiffs' "civil rights" claim is moot. For the reasons discussed in Part III–A, *supra,* the court finds that the motion to dismiss is not well taken.

**V. *Union Defendants' Renewed Motion to Dismiss.***

In this motion the Union Defendants present additional reasons for dismissing plaintiffs' claim of breach of duty of fair representation.

First, Union Defendants argue that plaintiffs have not made a claim against defend-

ants IWA and Local 5–376 because the complaint contains no specific allegations concerning any action by them. If this were the only defect in plaintiffs' allegations, the court would be reluctant to dismiss the claim against these two defendants, *see Czosek v. O'Mara,* 397 U.S. 25, 27, 90 S.Ct. 770, 772, 25 L.Ed.2d 21, 24 (1970), but that is not the case. In Part III–B, *supra,* the court found that plaintiffs failed to state a statutory basis for the claim for breach of the duty to fairly represent all union members. That claim will be dismissed unless plaintiffs amend the claim within 15 days. The court believes that the ruling in Part III–B moots the argument made here.

Second, the Union Defendants argue that the claim for breach of duty to fairly represent all union members should be dismissed as to defendants Reed, Gorman and Campbell because individual officers and employees do not owe anyone a duty of fair representation under the National Labor Relations Act. Since the fair representation claim will be dismissed because plaintiffs have not alleged a statutory basis for that claim, the court believes that it need not rule on this argument unless plaintiffs amend their claim to indicate the statutory basis for their fair representation claim. The motion for dismissal of defendants Gorman, Reed and Campbell on the ground that the National Labor Relations Act does not impose upon them a duty of fair representation will be denied but without prejudice to their right to raise the argument at a later time.

## VI. *Union Defendants' Motion to Dismiss Six Plaintiffs.*

The Union Defendants seek imposition of the sanction of dismissal under Fed.R.Civ.P. 37(d) against plaintiffs Henry Smith, Henry Henderson, Jr., Franklin E. Stricklin, Hughie James, George F. Stricklin and Joel Chrestman for their failure to respond to the Union Defendants' discovery.

On May 30, 1978, the Union Defendants propounded interrogatories to plaintiffs Booker, Owens, Smith, Henderson, Franklin Stricklin, George Stricklin, James and Chrestman. When plaintiffs did not timely respond to the interrogatories, the Union Defendants filed a motion to compel, which was heard by the United States Magistrate. Plaintiffs' counsel responded to the motion and informed the magistrate that the responses had been delayed because of difficulty in locating some of the plaintiffs. The magistrate sustained the motion to compel and ordered plaintiffs to serve their response to the interrogatories on or before July 31, 1978. Plaintiffs' counsel filed responses verified and signed by plaintiffs Booker and Owens and responses which had not been verified or signed for plaintiffs George Stricklin and Chrestman, but no responses from plaintiffs Smith, Henderson, Franklin Stricklin and James were filed.

Although Union Defendants cite Fed.R. Civ.P. 37(d) as authorizing dismissal, the court believes that Fed.R.Civ.P. 37(b) is also applicable. These two subparts read in part:

(b) Failure to Comply with Order.

* * * * *

(2) Sanctions by Court in Which Action is Pending. If a party . . . fails to obey an order to provide . . . discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

* * * * *

(c) An order striking out pleadings or parts thereof, . . . or dismissing the action or proceeding or any part thereof, . . .

* * * * *

(d) Failure of party to attend at own deposition or serve answers to interrogatories or respond to request for inspection. If a party . . . fails . . . (2) to serve answers or objections to interrogatories submitted under Rule 33, after proper service of the interrogatories . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under

paragraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

Under a literal reading of Rule 37(b) and 37(d), dismissal of plaintiffs Smith, Henderson, Franklin Stricklin and James, is authorized because they have not filed a response to the interrogatories and they have not complied with a court order to provide discovery. The Fifth Circuit recently discussed use of the dismissal sanction for failure to obey the court's discovery orders.

Rule 37 of the Federal Rules of Civil Procedure authorizes the court to order dismissal of a party's claims for failure to obey discovery orders of the court. It is, however, the most extreme sanction provided for in the rule, and the Supreme Court has emphasized the necessity for cautious use of the rule:

> . . . Rule 37 should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial [discovery] order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner.

*Societe Internationale Pour Participations Industrielles Et Commerciales v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958). This sanction should be exercised only in exceptional circumstances. *Thomas v. United States,* 5 Cir. 1976, 531 F.2d 746, 749.

The limitation on the use of this sanction applies to protect those who, through no fault of their own, are unable to comply with court orders. *Emerick v. Fenick Industries, Inc.,* 5 Cir. 1976, 539 F.2d 1379, 1381; see also *Thomas v. United States, supra; Dorsey v. Academy Moving and Storage,* 5 Cir. 1970, 423 F.2d 858, 861. It does not protect willful or bad faith noncompliance with court orders. *In re Liquid Carbonic Truck Drivers Chemical, etc.,* 580 F.2d 819, 822 (5th Cir. 1978). In *Griffin v. Aluminum Company of America,* 564 F.2d 1171 (5th Cir. 1977), the Fifth Circuit dealt with dismissal of a complaint under Rule 37(d); "Where this circuit has approved dismissal as a sanction imposed under Rule 37(d), plaintiff's failure to comply with discovery has involved either repeated refusals or an indication of full understanding of discovery obligations coupled with a bad faith refusal to comply." 564 F.2d at 1172.

In this case, the interrogatories were filed approximately 7 months ago. More than 5 months have passed since the July 31, 1978, deadline established in the court's discovery order. No explanation for plaintiffs' failure to respond has been given and plaintiffs have not asked for additional time to respond. In the "Opposition to Motions to Dismiss by Defendants", filed on November 2, 1978, plaintiffs' counsel states: "The Court should not dismiss this cause because counsels [sic] have not been able to contact some of the plaintiffs, but rather if defendants know their whereabouts or have information that will lead to their findings, defense counsel should come forward with said information." The pleading does not identify the plaintiffs whose whereabouts are unknown but assuming that plaintiffs Smith, Henderson, Franklin Stricklin and James are among the missing plaintiffs their failure to respond to the Union Defendants' interrogatories would be explained but not excused. The record does not support plaintiffs' counsel's demand for defendants to reveal the whereabouts of these missing plaintiffs, assuming defendants have such information. The discovery procedures are available for obtaining such information, but from the court's review of the discovery undertaken by plaintiffs, including plaintiffs' depositions of some of the Union Defendants, the court does not recall plaintiffs asking defendants for information about the residence or place of employment for any of the plaintiffs.

If plaintiffs Smith, Henderson, Franklin Stricklin and James have moved and have not informed their counsel of their whereabouts, such action indicates a lack of interest in, if not an abandonment of, their case which would justify their dismissal. However, the record will not support such a finding at this time. The court will deny the motion to dismiss but will again order

the four plaintiffs to respond. If any of the four plaintiffs cannot be located, plaintiffs' counsel will be required to file an individual response on behalf of each missing plaintiff stating that the plaintiff has not been located and for that reason has not responded to the interrogatory. The response shall also indicate the date or approximate date when counsel last had contact with that plaintiff and the plaintiff's last known mailing address or residence. The denial of the motion to dismiss as to plaintiffs Smith, Henderson, Franklin Stricklin and James, is without prejudice to Union Defendants' right to renew the motion after the filing of the responses.

■ Plaintiffs George Stricklin and Chrestman did file responses to Union Defendants' interrogatories in compliance with the court's order to compel and for that reason the motion for imposition of the dismissal sanction is not well taken. Union Defendants are complaining that the responses are incomplete because the answers were not signed by plaintiffs and were not made under oath as required by Fed.R. Civ.P. 33. The proper remedy for incomplete answers is a motion to compel under Rule 37(a)(3), not a motion for sanctions under Rule 37(d). *See* 4A *Moore's Federal Practice*, ¶ 37.02[5] (2d ed. 1978); 8 C. Wright & A. Miller, *Federal Practice and Procedure*, § 2291 at 810 (1970).

Since the deficiency in the responses by plaintiffs George Stricklin and Chrestman is obvious, the court will treat Union Defendants' motion for dismissal as to plaintiffs George Stricklin and Chrestman as a motion to compel and will require these two plaintiffs to file responses which have been signed and made under oath. Should these two plaintiffs be among the plaintiffs whose location is unknown, plaintiffs' counsel shall file a response on behalf of each plaintiff stating that the plaintiff's whereabouts is unknown and for that reason cannot comply with the court's order.

VII. *Plaintiffs' Request for Reversal of the Magistrate's Order.*

■ Plaintiffs have filed two pleadings which seek reversal of an order entered on November 21, 1978, by United States Magistrate J. David Orlansky. The magistrate's order sustained Union Defendants and Local Defendants' motions for sanctions against plaintiffs and/or their attorneys and ordered Honorable Alvin O. Chambliss and Honorable Leonard McClellan, plaintiffs' counsel, to pay $435.75 to the Union Defendants and $155.10 to the Local Defendants as a sanction for plaintiffs' counsels' failure to prepare for the pre-trial conference held on October 12, 1978. Plaintiffs' two pleadings are captioned:

1. Objections to Order of Magistrate and Application for Review by the District Judge.

2. Plaintiffs' Cross Motion for Reversal of Magistrate's Order or in the Alternative Sanctions Against Defendants' Failure to Allow Discovery.

When reviewing an appeal of a magistrate's order, the court applies the standard found in Local Rule M–3(b)(2), which provides:

(2) No ruling of a magistrate in any matter which he is empowered to hear and determine shall be reversed, vacated or modified on appeal unless the district judge shall determine that the findings of the magistrate are clearly erroneous, or that the magistrate's ruling is contrary to law or constitutes an abuse of discretion.

After reviewing the magistrate's order and plaintiffs' arguments for reversal, the court finds that plaintiffs have not shown that the magistrate's findings were clearly erroneous or that his ruling is contrary to law or an abuse of discretion.

Most of plaintiffs' argument are not relevant to the magistrate's ruling and for that reason will not be discussed. One argument made by plaintiffs deserves comment even though it does not support reversal of the magistrate.

Plaintiffs state that they were not prepared for the pretrial conference because the defendants either refused to respond or did not provide complete responses to plaintiffs' discovery. Plaintiffs contend that

they could not prepare for the pretrial conference without the information sought in their discovery. Since the defendants failed to provide the discovery, the defendants are to blame for plaintiffs' unpreparedness and therefore the imposition of sanctions is not fair. This argument is not persuasive because when faced with the alleged failure by defendants to make discovery, plaintiffs did not use the procedure in Fed.R.Civ.P. 37 to ask the court for an order to compel. Although plaintiffs cite numerous instances where defendants allegedly failed to respond to plaintiffs' discovery, the record shows that plaintiffs have had time to file motions to compel, but have not done so.[10] This is not a case where plaintiffs' efforts to prepare for a pretrial conference have been thwarted by defendants' refusal to respond to discovery. Instead, the record shows that this is a case where plaintiffs, when faced with the alleged refusal by defendants to respond to discovery did not diligently seek a motion to compel and therefore cannot now use the alleged refusal by defendants to respond to plaintiffs' discovery as an excuse for plaintiffs' failure to be prepared for the pretrial conference.

The court also finds that plaintiffs' alternative motion for sanctions against defendants for failure to allow discovery is not well taken. The motion does not indicate the deficiency of defendants' responses and plaintiffs have not filed a certificate as required by Local Rule C–6. The motion for sanctions will be denied but without prejudice to plaintiffs' right to file a proper motion to compel. See Fed.R.Civ.P. 37; Local Rule C–6.

## VIII. *Class Action.*

■ Although neither side has raised the certification issue in a motion, the court "has an independent obligation to decide whether an action was properly brought as a class action even if neither party moves for a ruling." *Gore v. Turner,* 563 F.2d 159, 165 (5th Cir. 1977). In order to implement the requirement of Fed.R.Civ.P. 23(c)(1) that a determination be made "[a]s soon as practicable" as to whether an action may proceed as a class action, this court promulgated Local Rule C–7 which requires the party seeking class certification to either move for certification within 60 days of the filing of defendant's answer or to seek additional time before the expiration of the 60-day period in order to move for certification.

The latest answer filed by the defendants was filed on December 19, 1977. As of this date, plaintiffs have not filed a motion for class certification or asked for additional time to do so.

One of the factors to be considered when deciding if a plaintiff should be permitted to represent a class, is whether he will adequately represent the interests of the class. Fed.R.Civ.P. 23(a)(4). Without expressing an opinion as to whether these plaintiffs have satisfied the other criteria established in Fed.R.Civ.P. 23(a), the court finds under the facts of the case, that plaintiffs' failure to timely move for class certification, to timely respond to discovery and to keep their counsel informed of their whereabouts and the failure of plaintiffs' counsel to prepare for the pretrial conference and to diligently seek the remedy provided in Fed.R.Civ.P. 37 when faced with defendants' alleged failure to adequately respond to plaintiffs' discovery, demonstrates that they will not "fairly and adequately protect the interests of the class,"

10. Plaintiffs give the following examples of defendants' refusal to make discovery: (1) Use of "boiler plate" objections in responses filed by defendant Champion to plaintiffs' interrogatories; (2) Failure by defendant Champion to respond to all of the requests in plaintiffs' Request for Production; (3) Failure of defendant East to appear at deposition; (4) Failure of defendants to produce records requested by plaintiff; (5) Defendant Gorman's counsel's refusal to permit one of plaintiffs' counsel to re-examine defendant Gorman at his deposition after plaintiffs' other counsel had tendered the witness to opposing counsel and had indicated that plaintiffs had completed their examination. Although the latest of these alleged discovery violations occurred more than 3 months ago, the record shows that plaintiffs have filed no motions to compel.

284

Fed.R.Civ.P. 23(a)(4), and for that reason they may not bring this case as a class action. *See East Texas Motor Freight System, Inc. v. Rodriquez,* 431 U.S. 395, 409, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453, 463 (1977); *Cunningham v. St. Clair,* 77 F.R.D. 375 (N.D.Miss.1977). The court will enter an order denying these plaintiffs the right to prosecute this action on behalf of a class.

IX. *Conclusion.*

Plaintiffs have raised several arguments in their pleadings and memorandum which go to the merits of the case and were not related to the questions before the court. Defendants responded to some of plaintiffs' arguments in their reply memoranda. The court has not considered or discussed these arguments because they were not before the court in a properly filed motion or other pleading. The court expresses no opinion on the validity of these arguments.

Plaintiffs have also cited statutes in their memorandum which they claim provide a statutory basis for some of the claims made in the complaint. The court expresses no opinion on whether plaintiffs do state a cause of action under the statutes cited in the memorandum but not cited in the complaint. The court only informs the plaintiffs that the proper action for them is to seek permission to amend the complaint if they desire to allege a cause of action under any particular statute not already cited in the complaint.

An appropriate order will be entered.