NATIONAL LIFE INSURANCE
COMPANY, Appellant,

v.

HARTFORD ACCIDENT AND INDEM-
NITY COMPANY, a Connecticut Corpo-
ration; Great American Life Insurance
Company, a New York Corporation;
Seaboard Surety Company, a New York
Corporation; and Fidelity and Casualty
Company of New York, a New York
Corporation.

No. 79–1981.

United States Court of Appeals,
Third Circuit.

Submitted under Third Circuit Rule
12(6) Jan. 7, 1980.

Decided Feb. 14, 1980.

William J. Gallwey, III, Linda K. Huber, Shutts & Bowen, Miami, Fla., for appellant.

Donald C. Marino, Philadelphia, Pa., for Arnold Weiss, witness-appellee.

R. Owen Ricker, Jr., Bradford, Williams, McKay, Kimbrell, Hamann, Jennings & Kniskern, P. A., Miami, Fla., for appellee Great American Ins. Co.

Before GIBBONS, ROSENN and GARTH, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal requires that we decide whether a witness under subpoena in a civil proceeding may validly exercise his fifth amendment privilege against self-incrimination by refusing to submit to any interrogation except for questions as to his name and business address. We hold that a witness in a civil proceeding may not invoke a blanket fifth amendment privilege prior to the propounding of questions and, therefore, reverse the judgment of the district court.

### I.

National Life Insurance Company ("National Life") commenced an action in the United States District Court for the Southern District of Florida against Hartford Accident and Indemnity Company and several other insurance companies seeking recovery under bonding agreements for injuries resulting from the allegedly fraudulent acts of two of National Life's general agents. In the normal course of discovery, a subpoena duces tecum was issued by the District Court for the Eastern District of Pennsylvania commanding Arnold Weiss to appear for the taking of his deposition and instructing him to bring certain enumerated documents. Weiss, a certified public accountant, and his firm, Weiss, Freedman & Company, apparently had some dealings with the two National Life general agents.

Weiss appeared at the deposition, stated his name and business address and then, through his attorney, refused to testify further on the ground of possible self-incrimination. Weiss' attorney stated:

If you want to submit a list of the questions, I would be most happy to sit down with Mr. Weiss and make a determination of whether or not he can answer them or give you an affidavit with regard to those questions. But I will not allow him to be questioned at this time.

Before any additional questions could be asked, Weiss left the deposition proceedings. National Life continued the examina-

tion *in absentia,* recording "no response" to the remaining questions.

Following Weiss' refusal to testify, National Life moved under Fed.R.Civ.P. 37(a)(1) in the district court for an order compelling Weiss to appear a second time for the taking of his deposition and requiring him to assert his privilege against self-incrimination only as to those specific questions which Weiss believed might involve incriminatory responses. The district court denied the motion, reasoning that

> [T]he face of the questions asked to Mr. Weiss *in absentia* shows that answers might establish a connection between Mr. Weiss and certain other individuals, and might link Mr. Weiss and the others to dubious insurance sales practices and clandestine disposal of the funds generated by those practices.

National Life filed this appeal, arguing that Weiss has no right to assert a blanket fifth amendment privilege in a civil proceeding before the questions are put to him.

## II.

■ This court, *sua sponte,* has raised the issue of appellate jurisdiction and requested both parties to submit supplemental briefs. Our concern was that the order of the, district court, denying the motion to compel discovery was not "final" within the meaning of 28 U.S.C. § 1291.[1] After careful consideration, we conclude that the order is appealable under the collateral order doctrine.

In *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949), the Supreme Court stated the principle that certain collateral orders are appealable. In *Rodgers v. Unit-*ed *States Steel Corp.,* 508 F.2d 152 (3d Cir. 1975), we interpreted *Cohen,* and pointed out that a collateral order to be appealable must also be final. Writing for the court, Judge Gibbons held that before an order is appealable as collaterally final three requisites must be found:

> The order must be a final rather than a provisional disposition of an issue; it must not be merely a step toward final disposition of the merits; and the rights asserted would be irreparably lost if review is postponed until final judgment.

*Id.* at 159.

In this case all the conditions of *Rodgers* are met. The order of the court for the Eastern District of Pennsylvania is final as to the only issue before it and it is not merely a provisional disposition of the issue. The substantive litigation of this case is taking place in the Southern District of Florida. The only action sought from the District Court for the Eastern District of Pennsylvania was the deposition of Weiss. No action that could be taken on appeal from final judgment in the principal cause could affect the district court's resolution of the motion to compel in the Eastern District of Pennsylvania. The Fifth Circuit on appeal of the principal action would not have jurisdiction to review this order from the Eastern District of Pennsylvania. Thus, National Life's right to appeal this motion would be irrevocably lost if we were not to allow this appeal.[2]

## III.

■ It is undisputed that the fifth amendment privilege against self-incrimination may be asserted in a civil action as well as a criminal action.[3] *McCarthy v.*

---

**1.** In pertinent part, 28 U.S.C. § 1291 (1976) provides:

> The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . .

**2.** Other circuits to consider the finality of orders denying discovery motions in proceedings ancillary to the main action have also found jurisdiction. *See, e. g., Premium Service Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225 (9th Cir. 1975); *Ochsner v. Millis,* 382 F.2d 618 (6th Cir. 1967); *Republic Gear Co. v. Borg-Warner Corp.,* 381 F.2d 551 (2d Cir. 1967); *Horizons Titanium Corp. v. Norton Co.,* 290 F.2d 421 (1st Cir. 1961).

**3.** The language of the fifth amendment is silent as to its applicability in civil suits. The amendment provides in part that: "No person . . . shall be compelled in any criminal case to be a witness against himself." However, the history of the amendment made it clear that the framers intended the privilege to apply in civil

*Arndstein,* 266 U.S. 34, 40, 45 S.Ct. 16, 17, 69 L.Ed. 158 (1924). Furthermore, "[t]he privilege protects a mere witness as fully as it does one who is also a party defendant," *id.,* but the witness is not entitled to any greater protection, as Weiss seems to assert, than is a defendant.

■ In this case, we must determine whether Weiss properly asserted the privilege even though the questions were not propounded and thus, he could not have been aware of their content. The fifth amendment shields against compelled self-incrimination, not legitimate inquiry, in the truth-seeking process. The task of discerning the self-incriminating from the non-incriminating falls upon the witness asserting the privilege in the first instance. This, however, is merely a subjective judgment. The juridical responsibility of objectively assessing whether the silence is justified rests with the court. The court, however, cannot effectively determine whether "a responsive answer to a question or an explanation of why it cannot be answered might be [incriminating]" except in the context of a propounded question. *Hoffman v. United States,* 341 U.S. 479, 487, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951).

■ In *Hoffman v. United States, supra,* 341 U.S. at 479, 71 S.Ct. at 814, the Supreme Court had occasion to examine the fifth amendment privilege in the context of a special federal grand jury investigation. Although the Court recognized that the fifth amendment privilege must be liberally construed in favor of the right it was intended to secure, it also made clear that the privilege may not be exercised solely upon the subjective determination of the witness who invokes it. The protection, the Court stated,

> must be confined to *instances where the witness has reasonable cause to apprehend danger from a direct answer.* The witness is not exonerated from answering

merely because he declares that in so doing he would incriminate himself—his say-so does not of itself establish the hazard of incrimination. *It is for the court to say whether his silence is justified, and to require him to answer if 'it clearly appears to the court that he is mistaken.'* (emphasis added; citations omitted).

It is apparent, therefore, that a witness cannot relieve himself of the duty to answer questions that may be put to him by a mere blanket invocation of the privilege. The Court outlined the manner in which the interrogation may be conducted and the privilege protected.

> [I]f the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, he would be compelled to surrender the very protection which the privilege is designed to guarantee. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result. The trial judge in appraising the claim 'must be governed as much by his personal perception of the peculiarities of the case as by the facts actually in evidence.'

*Id.* at 486–487, 71 S.Ct. at 818 (citations omitted).

We have previously had occasion to confront this issue in *In re Commonwealth Financial Corp.,* 288 F.Supp. 786 (E.D.Pa. 1968), *aff'd,* 408 F.2d 640 (3d Cir. 1969), where we affirmed *per curiam* the action of the district court in holding that a witness in a bankruptcy proceeding could not assert a blanket fifth amendment privilege prior to hearing the questions. In *In re Commonwealth Financial Corp.,* the president of a debtor corporation filed a motion for a protective order to prevent the bankruptcy

suits. The privilege originated in early English common law as a response to the unfettered ability of English judicial officers to place a witness under oath and conduct broad inquiries into possible criminal activity. Note, *The Fifth*

*Amendment and Compelled Testimony: Practical Problems in the Wake of Kastigar,* 19 Vill.L. Rev. 470, 471 (1974). Obviously, there may be a risk of compelled self-incrimination in civil, as well as criminal actions.

trustees from examining him in a Chapter X proceeding. The president argued that he had a fifth amendment right to refuse to testify because his statements to the trustees might be used by the Securities Exchange Commission in its independent investigation of the debtor's affairs and potentially form the basis of a criminal prosecution. The district court denied the protective order, holding that "[t]he fact that a contemplated area of inquiry may be potentially incriminatory does not authorize or indeed require a blanket invocation of the privilege against self incrimination . . . ." 288 F.Supp. at 789–90. The court reasoned that the president's right to assert the privilege to objectionable questions would protect his fifth amendment rights while allowing for the possibility of responses to non-objectionable questions.[4]

Other jurisdictions have also held that there is no privilege to refuse to testify in civil cases where the questions have not been put forth. In *In re Turner,* 309 F.2d 69 (2d Cir. 1962), Judge Friendly stated that a taxpayer may not refuse to appear before an Internal Revenue Service special agent even though potential criminal charges may eventuate; the witness must appear and assert the fifth amendment privilege as specific questions are asked.

> During investigative proceedings that may or may not lead to indictment and trial, a prospective defendant whose testimony is sought is still only a witness and . . . like any other witness he must obey the process of the authority summoning him to appear and claim the constitutional privilege as *particular questions are asked.*

309 F.2d at 71 (emphasis added). Similarly, in *United States v. Roundtree,* 420 F.2d 845, 852 (5th Cir. 1969), Judge Wisdom wrote that

> even if the danger of self-incrimination is great, Roundtree's remedy is not to voice

a blanket refusal to produce his records or testify. Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense.

Other circuit courts also have reached the conclusion that blanket refusal to answer questions is not sufficient to raise constitutional issues. *United States v. Carroll,* 567 F.2d 955, 957 (10th Cir. 1977); *United States v. Awerkamp,* 497 F.2d 832, 835–36 (7th Cir. 1976); *Capitol Products Co. v. Hernon,* 457 F.2d 541, 542–43 (8th Cir. 1972); *United States v. Harmon,* 339 F.2d 354, 359 (6th Cir. 1964).

In this case, Weiss asserted his fifth amendment privilege and left the deposition after summarily supplying only his name and business address. He was totally oblivious of the nature or content of the proposed questions. We have reviewed the questions that were submitted to Weiss *in absentia.* Several of the questions following Weiss' departure are illustrative of a number of others which Weiss probably could have answered without incriminating himself if he had not prematurely departed.

Q. How long have you been a Certified Public Accountant?

A. (No response.)

Q. Of what professional associations are you a member?

A. (No response.)

Weiss argues that he properly asserted his privilege by leaving the deposition because he offered to read the questions in advance and then decide which questions to answer. This procedure is unsupported by any rule of civil procedure or any case law. To the contrary, the Federal Rules of Civil Procedure specifically give a party the right to question a witness by oral deposition. Fed.R.Civ.P. 30. The Rule gives the party, not the witness, the option of conducting a deposition by written ques-

---

4. The district court relied in part on an earlier decision of this circuit, *In re U. S. Hoffman Can Corp.,* 373 F.2d 622 (3d Cir. 1967), where the court held that officers of a bankrupt corporation could not refuse to file all documents under a blanket fifth amendment privilege. The

court said the officers could refuse specific documents but not documents which "could not possibly be incriminating no matter how broadly the privilege is construed." 373 F.2d at 627.

**600**

tions. Fed.R.Civ.P. 31. We see no policy justification for allowing the witness the option of reviewing written questions prior to the deposition.[5]

By denying the availability of a blanket fifth amendment privilege, we in no way limit the scope of an individual's fifth amendment rights and avoid the possibility of prejudice to the civil litigant. The civil party retains the right to ask the question and the witness receives the full protection of the right against self-incrimination. Under such circumstances, the trial court is in a position to assess the validity of an asserted privilege and avoid its abuse.

IV.

The district court reviewed National Life's questions and held that Weiss' privilege was properly asserted. We conclude that the district court erred because the privilege against self-incrimination in a civil proceeding may not be asserted prior to the propounding of the questions. Therefore, the order of the district court denying National Life's motion to compel Weiss to appear for the taking of his deposition and requiring him to assert his privilege to specific questions will be reversed.

Costs taxed against the appellee, Weiss.

GIBBONS, Circuit Judge, concurring and dissenting.

I join in Part II of Judge Rosenn's opinion. We are reviewing a final order in a proceeding in the Eastern District of Pennsylvania to compel deposition testimony for use in another district. I dissent, however, from Part III. I agree that a witness cannot relieve himself of the duty to answer questions by a mere blanket invocation of the privilege against self-incrimination. In this instance, however, counsel for the party seeking the testimony, when faced with such a blanket invocation did not immediately resort to the court for assistance. Instead he read into the record the questions he wanted answered. The district court had the benefit of a transcript of those

questions, reviewed them, and concluded that most of them would tend to incriminate. The majority has selected two which, they say, the witness could probably have answered without incriminating himself. Those questions, however, were entirely preliminary and the answers would be totally useless to the party seeking them. Since the district court reviewed the questions asking for substantive information, and those sought information likely to incriminate, the procedural error on which the majority relies appears to me to be harmless. The result on remand is in all probability going to be an exercise in futility. I would affirm.

**5.** Indeed, there are strong reasons why a party will select to proceed by oral deposition rather than alternate means, most significantly the spontaneity of the responses.