**SECURITIES AND EXCHANGE COMMISSION, Plaintiff-Appellee,**

v.

**FIRST FINANCIAL GROUP OF TEXAS, INC., Defendant,**

**William H. Howton, et al., Defendants-Appellants.**

No. 80–1895
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Oct. 21, 1981.

Rhett G. Campbell, Houston, Tex., for defendants-appellants.

Michael K. Wolensky, Douglas J. Scheidt, Linda D. Fienberg, Paul Gonson, Asst. Gen. Counsels, Securities & Exchange Comm., Washington, D. C., for plaintiffs-appellees.

Before AINSWORTH, REAVLEY and RANDALL, Circuit Judges.

AINSWORTH, Circuit Judge.

William H. Howton and Vining Tower Reynolds, Jr., officers of First Financial Group of Texas, Inc. (First Financial), a Texas corporation engaged in the business of offering and selling securities to the public, appeal from two separate judgments of the United States District Court for the Southern District of Texas which held them in contempt of court and permanently enjoined them from further violations of the federal securities laws. The district court entered these judgments in an action brought by the Securities and Exchange

Commission (SEC) to enjoin Howton, Reynolds, and First Financial from continuing to engage in fraudulent practices in connection with the sale of guaranteed student loans. We agree with the district court's holdings and affirm.[1]

## I. Statement of the Case

### A. Background to the District Court Proceedings

Beginning in May 1979, Howton and Reynolds, acting as representatives of First Financial, began to market packages of guaranteed student loans and repurchase agreements totalling approximately nine million dollars to several institutional investors.[2] As part of the agreements reached between First Financial and these investors, First Financial agreed to deposit the loans with a third party, such as a bank, and also agreed to repurchase the loans from the investors either on a specified date or at the option of the investor. First Financial dishonored its obligations under these agreements and the SEC subsequently brought this suit against appellants and First Financial under the federal securities laws.[3]

### B. Proceedings before the District Court

The SEC filed its complaint against First Financial on August 24, 1979. District Judge Bue issued a temporary restraining order against appellants and First Financial that day restraining the alleged unlawful conduct, and set a hearing on the SEC's motion for a preliminary injunction for August 31. On August 27, the SEC began discovery proceedings by filing a motion under Fed.R.Civ.P. 30(a) to depose appellants and other persons associated with First Financial and to examine First Financial's corporate and financial records. The SEC then served notice that it would depose Reynolds or any other authorized representative of First Financial on August 28 as well as examine certain specified documents of First Financial. The SEC also subpoe-

---

1. Prior to bringing this lawsuit, the SEC began an investigation of the events leading to this case. On April 18, 1979, the SEC issued a subpoena to First Financial requiring it to produce certain financial documents, and on June 18 the SEC applied to the district court for the Southern District of Texas for an order to compel First Financial to comply with the SEC's subpoena. *SEC v. First Financial Group of Texas, Inc.,* No. H–79–1243 (S.D.Tex., filed June 18, 1979). That action was unresolved at the time the SEC filed its complaint in this case, but the SEC has stated in its brief that it voluntarily dismissed that action on February 15, 1980. In an earlier decision by this court involving matters in this case, we affirmed the district court's entry of a preliminary injunction against First Financial as well as the district court's appointment of a temporary receiver for First Financial. We also dismissed as moot Howton's and Reynolds' appeal from the district court's entry of a preliminary injunction against them on the ground that the district court's entry of the permanent injunction involved in this appeal mooted its earlier order. *SEC v. First Financial Group of Texas, Inc.,* 645 F.2d 429 (5th Cir. 1981).

2. In its order granting the SEC's motion for a preliminary injunction, the district court described these securities as follows: "GSLs [guaranteed student loans] consist of student loans made by banks, or other financial institutions, that are guaranteed, if certain conditions are met, by the Office of Education (OE) of the Department of Health, Education and Welfare of the United States Government. Packages of GSLs are groupings of individual student loans which vary in amount. The student loans comprising these packages are made by originating banks to students in institutions of higher education or at certain vocational schools. These loans provide the holder with a seven percent return plus an additional interest increment determined on a quarterly basis by short-term United States Treasury Bill rates." *SEC v. First Financial Group of Texas, Inc.,* No. H–79–1772 slip op. at 2–3 (S.D.Tex., Sept. 28, 1979), *aff'd in part, appeal dismissed as moot in part,* 645 F.2d 429, 440 (5th Cir. 1981).

3. The SEC brought this suit based upon § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. 240.10b-5, promulgated under the 1934 Act, which render unlawful the offer or sale of securities through fraudulent, manipulative, or deceptive schemes or devices, including the use of false or misleading statements of material fact. *SEC v. First Financial Group of Texas, Inc.,* 645 F.2d 429, 431 & n.2 (5th Cir. 1981). Section 20(b) of the 1933 Act, 15 U.S.C. § 77t(b), and § 21(d) of the 1934 Act, 15 U.S.C. § 78u(d), authorize the SEC to seek permanent injunctions to prevent violations of the securities laws. *SEC v. Zale Corp.,* 650 F.2d 718, 720 (5th Cir. 1981).

naed Howton and Reynolds to be witnesses at the hearing on the SEC's motion for a preliminary injunction on August 31. Reynolds appeared for the August 28 deposition on behalf of First Financial but refused either to testify or to produce any of the subpoenaed documents. Howton and Reynolds both failed either to appear or to produce any of the subpoenaed material for the August 31 hearing.

At that hearing, District Judge Sterling ordered appellants to make themselves available for discovery. The hearing was not completed that day and Judge Sterling set the remainder of the hearing for September 7. The SEC then served notice upon appellants of its intent to depose them as well as examine First Financial's records on September 5. Appellants again failed either to appear for this deposition or to produce the requested documents. The SEC repeated its procedure on September 5, and issued subpoena's directing appellants to appear for testimony and produce First Financial's records at the September 7 continuation of the SEC's motion for a preliminary injunction. Again, appellants failed either to appear or to produce the subpoenaed material.

At the September 7 hearing, the District Judge ordered appellants to appear for depositions and to produce the subpoenaed material within the next two weeks. The SEC noticed a deposition for September 14 at which both appellants failed to appear or produce any documents. The SEC renoticed a deposition for September 20, which was continued until September 21 at the request of appellants' counsel. Reynolds finally appeared for this deposition, but he refused to testify on any substantive matter or to produce any documents of First Financial.

On November 2, the SEC filed a motion seeking to have the district court compel appellants to submit to discovery before a magistrate. The district court granted this motion, without opposition, on February 15, 1980, and ordered appellants to testify before a magistrate on March 3 and produce the records subpoenaed by the SEC. Reyn-

olds appeared at the March 3 deposition but refused either to testify, produce the subpoenaed material, or assert any privilege to justify his noncompliance with the district court's February 15 order. Howton did not appear or provide the SEC with any documents. The magistrate orally directed appellants at the March 3 deposition to appear before the district court on March 10 to show cause why they should not be held in contempt of the district court's February 15 order. Neither appellant appeared for the March 10 hearing. The district court thereupon held appellants in contempt of court for "totally violat[ing] all of the aforesaid orders of the Court" and ordered appellants confined for ten days unless they purged the contempt.

The SEC subsequently filed a motion for default judgment against appellants under Fed.R.Civ.P. 37(b)(2) requesting a permanent injunction. Appellants did not oppose this motion and on March 20 the district court entered a default judgment against appellants, accompanied by findings of fact and conclusions of law, permanently enjoining appellants from engaging in certain conduct in violation of the federal securities laws. Appellants subsequently moved for a new trial, requesting the district court to vacate its default judgment, and Reynolds also requested a new trial on the district court's contempt order. The district court denied both motions and this appeal followed.

II. Default Judgment

■ Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure specifically empowers a district court to enter "a judgment by default against the disobedient party" for his failure "to obey an order to provide or permit discovery." *See Roadway Express, Inc. v. Piper*, 447 U.S. 752, 763, 100 S.Ct. 2455, 2462, 65 L.Ed.2d 488 (1980); *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976) (per curiam). District Courts have broad discretion in determining whether to impose a sanction under Rule 37 and, if so, what

sanction to impose. *National Hockey League v. Metropolitan Hockey Club, supra,* 427 U.S. at 642, 96 S.Ct. at 2780; *Marshall v. Segona,* 621 F.2d 763, 766 (5th Cir. 1980). In reviewing a district court's entry of a Rule 37 sanction our role is limited to a determination of whether important historical findings made by the district court are clearly erroneous and whether the district court abused its discretion in imposing a particular sanction. *Marshall v. Segona, supra,* 621 F.2d at 766–67. *See National Hockey League v. Metropolitan Hockey Club, supra,* 427 U.S. at 642, 96 S.Ct. at 2780.

Appellants challenge the default judgment on four grounds. First, appellants contend that the district court's factual findings are clearly erroneous. Second, appellants argue that the district court abused its discretion in entering a default judgment. Third, appellants argue that the district court should have stayed this civil SEC proceeding pending the outcome of a grand jury investigation into the same transactions at issue here. Finally, appellants argue that the district court entered the default judgment without affording them adequate notice of its intention to do so. None of these contentions has merit.

### A. Factual Findings by the District Court

■ Appellants argue that the district court's factual findings are "wholly inaccurate and clearly erroneous." Appellants have correctly identified our standard of review on this claim which is "limited by the rule that 'findings of fact shall not be set aside unless clearly erroneous.'" *SEC v. Blatt,* 583 F.2d 1325, 1328 (5th Cir. 1978), quoting Fed.R.Civ.P. 52(a). *See McAllister v. United States,* 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954); *Stevens v. East-West Towing Co., Inc.,* 649 F.2d 1104, 1106 (5th Cir. 1981). Appellants bear the burden of demonstrating that the district court's factual findings are clearly erroneous. *Gupta v. East Texas State University,* 654 F.2d 411, 413 (5th Cir. 1981). The district court's findings, discussed above, detail the SEC's unsuccessful attempts to obtain testimony from Howton and Reynolds as well as the records of First Financial. Appellants do not challenge the district court's findings that they neither appeared, testified, nor produced the subpoenaed records. Nor do appellants contend that they did not in fact have notice of their discovery obligations under the various summonses issued by the SEC and orders issued by the district court. Instead, appellants' primary argument is that there is nothing in the record to support the district court's findings that they received notice of the different depositions and hearings that they were required to attend. However, the record fully supports the district court's findings that the SEC, the magistrate, or the district court itself sufficiently notified appellants of their attendance and production requirements. Appellants' arguments to the contrary are either factually inaccurate or legally irrelevant and are therefore rejected.

■ Appellants also contend that the district court did not find that appellants were in possession of the records of First Financial sought by the SEC. The records, according to appellants' briefs, were turned over to the temporary receiver appointed by Judge Sterling for First Financial shortly after October 10. Appellants, however, did not discuss possession of these records until the March 3 deposition. But, even assuming appellants' tardy representation to be true, it can not justify their refusal to produce these records for the SEC in response to its numerous requests prior to October 10 when they admittedly did have possession of the records. Moreover, the record discloses that the temporary receiver did not obtain these records until late February, 1980.

Finally, appellants contend that the district court's conclusion that they willfully failed to satisfy their discovery obligations finds no support in the record. Their argument proceeds from the assumption, which we have already rejected, that the district court's findings of fact are erroneous. Their conclusion falls with their premise.

### B. Abuse of Discretion

Appellants contend that the district court abused its discretion in entering a default judgment. Both appellants contend that they did not believe that they were required to attend the March 10 hearing on the magistrate's order to show cause why they should not be held in contempt. In addition, Reynolds argues on his own behalf that he did appear for depositions twice prior to the March 3 deposition and that he never intentionally failed to appear for any deposition or hearing. Therefore, appellants argue that the extreme sanction of a default judgment was inappropriate.

However, the magistrate's oral order directed to the parties and entered in the presence of Reynolds and the attorney for Reynolds and Howton was explicit in its requirement that both appellants appear before the district court on March 10 to show cause why they should not be held in contempt. The magistrate also entered a minute entry into the record requiring the appellants to appear for the show cause hearing. These orders clearly stated that appellants were required to appear before the district court and appellants' argument that the procedure followed by the magistrate was confusing is meritless.

Reynolds' argument that he never intentionally failed to appear for any deposition is similarly contrary to the record. His repeated absences from noticed depositions is well documented by the record and we can not accept his argument that these absences were not intentional.

In determining whether the district court abused its discretion "[i]t is not our responsibility as a reviewing court to say whether we would have chosen a more moderate sanction. It is our responsibility solely to decide whether the district court could, in its discretion, have determined the appellant's conduct to be so flagrant as to justify [entering a default judgment.]" *Emerick v. Fenick Industries, Inc.*, 539 F.2d 1379, 1381 (5th Cir. 1976). The district court based its decision upon the entire record of proceedings which amply discloses appellants' persistent refusal to respond to the discovery requests made by the SEC and to comply with the orders of the district court. The evidence demonstrates appellants' willful bad faith and callous disregard for the responsibilities of litigants, contradicting any inference of accidental oversight or confusion on their part. The capstone of appellants' unrelenting and abject refusal to satisfy their obligations is their failure even to appear for the hearing on the magistrate's order to show cause why they should not be held in contempt because of their prior absences and refusals to comply with the SEC's discovery requests. "[W]hen a defendant demonstrates flagrant bad faith and callous disregard of its responsibilities, the district court's choice of the extreme sanction is not an abuse of discretion." *Emerick v. Fenick Industries, Inc., supra*, 539 F.2d at 1381. The district court offered appellants every opportunity to satisfy their obligations and accordingly did not abuse its discretion in entering a default judgment.

### C. Stay of SEC Civil Proceedings

Appellants argue that the district court erred by failing to stay the SEC's civil proceedings once a federal grand jury began its criminal investigation of the same transactions underlying the SEC's suit. According to appellants, "once there is a criminal proceeding regarding the same transactions as are involved in a civil proceeding, the civil discovery against the subject of the criminal proceeding should cease in the civil case." Brief for Appellants at 14. Reynolds also argues that the magistrate and district court both erred in overruling his objection to the SEC's discovery attempts on the ground that the information sought was privileged.

There is no general federal constitutional, statutory, or common law rule barring the simultaneous prosecution of separate civil and criminal actions by different federal agencies against the same defendant involving the same transactions. Parallel civil and criminal proceedings instituted by different federal agencies are not un-

common occurrences because of the overlapping nature of federal civil and penal laws. The simultaneous prosecution of civil and criminal actions is generally unobjectionable because the federal government is entitled to vindicate the different interests promoted by different regulatory provisions even though it attempts to vindicate several interests simultaneously in different forums. The Supreme Court recognized that the federal government may pursue civil and criminal actions either "simultaneously or successively" in 1912 in *Standard Sanitary Manufacturing Co. v. United States,* 226 U.S. 20, 52, 33 S.Ct. 9, 16, 57 L.Ed. 107 [4] and reaffirmed this principle in 1970 in *United States v. Kordel,* 397 U.S. 1, 11, 90 S.Ct. 763, 769, 25 L.Ed.2d 1.[5] In both cases, the Supreme Court observed that prompt investigation and enforcement both civilly and criminally were sometimes necessary in order to protect the public interest and that deferring or foregoing either civil or criminal prosecutions could jeopardize that interest. Accordingly, the Supreme Court declined to create a per se rule forbidding simultaneous civil and criminal actions to enforce the antitrust and food and drug laws at issue in *Standard Sanitary Manufacturing Co.* and *Kordel.*

█ This principle is fully applicable when the SEC and Justice Department each seek to enforce the federal securities laws through separate civil and criminal actions. The District of Columbia Court of Appeals recently held in a similar context that the need to prosecute simultaneous civil and criminal actions to enforce the federal securities laws could be as pressing as the need to prosecute simultaneous actions to enforce the antitrust or food and drug laws. *SEC v. Dresser Industries, Inc.,* 628 F.2d 1368 (D.C. Cir.), (en banc), *cert. denied,* 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980). Protection of the efficient operation of the securities markets and the financial holdings of investors from fraudulent marketing practices may require prompt civil enforcement which can not await the outcome of a criminal investigation. *Id.* at 1375. We agree with the reasoning of the District of Columbia Court of Appeals and decline to create any per se rule forbidding the SEC and Justice Departments from pursuing simultaneous investigations or lawsuits into the same transactions allegedly in violation of the federal securities laws.

The Supreme Court's decision in *United States v. LaSalle National Bank,* 437 U.S. 298, 98 S.Ct. 2357, 57 L.Ed.2d 221 (1978), relied upon by appellants, does not require a contrary result. In *LaSalle National Bank* and its precursor *Donaldson v. United States,* 400 U.S. 517, 91 S.Ct. 534, 27 L.Ed.2d 580 (1971) the Supreme Court held that the Internal Revenue Service (IRS) may not use its authority to issue summonses under 26 U.S.C. § 7602 (1976) solely for the purpose of gathering information for a criminal prosecution. *See United States v. Davis,* 636 F.2d 1028, 1036 (5th Cir. 1981). But the rule set out in those cases was based upon limitations unique to the IRS

---

**4.** "The Sherman act provides for a criminal proceeding to punish violations, and suits in equity to restrain such violations, and the suits may be brought simultaneously or successively. The order of their bringing must depend upon the government; the dependence of their trials cannot be fixed by a hard-and-fast rule, or made imperatively to turn upon the character of the suit. Circumstances may determine and are for the consideration of the court. An imperative rule that the civil suit must await the trial of the criminal action might result in injustice or take from the statute a great deal of its power.... It is manifest, therefor, that the most favorable view which can be taken of the rights of defendants in such situation is that they depend upon the discretion of the court in the particular case."

**5.** "The public interest in protecting consumers throughout the Nation from misbranded drugs requires prompt action by the agency charged with responsibility for administration of the federal food and drug laws. But a rational decision whether to proceed criminally against those responsible for the misbranding may have to await consideration of a fuller record than that before the agency at the time of the civil seizure of the offending products. It would stultify enforcement of federal law to require a governmental agency such as the FDA invariably to choose either to forgo recommendation of a criminal prosecution once it seeks civil relief, or to deter civil proceedings pending the outcome of a criminal trial."

resulting from the statutory scheme of the Internal Revenue Code rather than upon any general principles concerning the simultaneous and parallel prosecution of civil and criminal cases by different federal agencies. *See SEC v. Dresser Industries, Inc., supra,* 628 F.2d at 1378–90 & n. 25. The SEC's authority to subpoena material from appellants under Fed.R.Civ.P. 26 is considerably broader than the IRS's authority to subpoena material under § 7602, encompassing the right to discover any non-privileged material relevant to the subject matter of the action. *See Wehling v. Columbia Broadcasting System,* 608 F.2d 1084, 1086 (5th Cir. 1979). Accordingly, the limitations imposed upon the IRS by § 7602 recognized by the Supreme Court in *LaSalle National Bank* are not applicable to this civil suit by the SEC. *Cf. SEC v. Dresser Industries, Inc., supra,* 628 F.2d at 1377–84 (*LaSalle National Bank* not applicable to SEC's issuance of summons).

■■■■ In "special circumstances," however, a district court should stay one of the proceedings pending completion of the other to prevent a party from suffering substantial and irreparable prejudice. *See United States v. Kordel, supra,* 397 U.S. at 11–13, 90 S.Ct. at 769–70, 25 L.Ed.2d 1; *SEC v. Dresser Industries, Inc., supra,* 628 F.2d at 1377. For instance, in *Wehling v. Columbia Broadcasting System, supra,* 608 F.2d 1084, we held that the district court erred by failing to stay a civil libel action pending the outcome of a related criminal investigation and potential prosecution or the running of the applicable statute of limitations after the plaintiff had validly claimed his fifth amendment privilege in response to the defendant's discovery requests and had sought a protective order staying the civil suit. *See also The Black Panther Party v. Smith,* 661 F.2d 1243, 1270–1274 (D.C. Cir. 1981); *United States v. U. S. Currency,* 626 F.2d 11, 14–15 (6th Cir. 1980); *Campbell v. Gerrans,* 592 F.2d 1054 (9th Cir. 1979); *Thomas v. United States,* 531 F.2d 746 (5th Cir. 1976). But in this case appellants neither sought a protective order from the district court nor objected to specific information sought by the SEC. Instead, appellants simply refused to respond at all to the SEC's discovery requests. Howton never appeared for any deposition or hearing before the district court and never produced any records for the SEC. Reynolds did appear for a few depositions but sought to exercise a blanket privilege by refusing to respond to any questions of any type and also never produced any records. "A blanket refusal to answer questions at deposition on the ground that they are privileged is an improper invocation of the fifth amendment, irrespective of whether such a claim is made by a plaintiff, defendant, or a witness." Note, *Plaintiff as Deponent: Invoking the Fifth Amendment,* 48 U.Chi.L.Rev. 158, 164 (1981); *id.* at 161. This Court has held that such a blanket assertion of the privilege is insufficient to relieve a party of the duty to respond to questions put to him, stating that "even if the danger of self-incrimination is great, [the party's] remedy is not to voice a blanket refusal to produce his records or testify. Instead, he must present himself with his records for questioning, and as to each question and each record elect to raise or not to raise the defense." *United States v. Roundtree,* 420 F.2d 845, 852 (5th Cir. 1969) (footnote omitted). *See United States v. Malnik,* 489 F.2d 682, 685 (5th Cir. 1974); Note, *supra,* 48 U.Chi.L. Rev. at 161. Requiring a party to object with specificity to the information sought from him permits the district court to rule on the validity of his claim of privilege. A party is not entitled to decide for himself whether he is protected by the fifth amendment privilege. Rather, this question is for the court to decide after conducting "a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore, whether or not the privilege is well-founded." *United States v. Melchor Moreno,* 536 F.2d 1042, 1049 (5th Cir. 1976). Even where a party has a legitimate claim of privilege with respect to certain questions or lines of inquiry, that person may not be entitled to invoke his privilege to remain totally silent. Only where the court finds that he could "legitimately

refuse to answer essentially all relevant questions," *United States v. Gomez-Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975), because of the threat of incrimination from any relevant questioning is a person totally excused from responding to relevant inquiries. Otherwise, a person is entitled to invoke the privilege "[o]nly as to genuinely threatening questions ...." *United States v. Melchor Moreno, supra*, 536 F.2d at 1049. *See generally United States v. Goodwin*, 625 F.2d 693, 700–01 (5th Cir. 1980). Therefore, a blanket invocation of the fifth amendment privilege is insufficient to relieve a civil litigant of the responsibility to answer questions put to him during the civil discovery process and to claim the privilege with respect to each inquiry. *See National Life Insurance Co. v. Hartford Accident & Indemnity Co.*, 615 F.2d 595, 598–600 (3d Cir. 1980); *id.* at 599 (cases cited); *In re Folding Carton Antitrust Litigation*, 609 F.2d 867, 873 (7th Cir. 1979) (per curiam); 8 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2018, at 142–43 (1970 & Supp.1981); Note, *supra*, 48 U.Chi.L.Rev. at 161, 164. Appellants' failure properly to raise their claim of privilege in the proceedings before the district court prevents them from relying on this contention on appeal.

### D. Notice of Default Judgment

■ Appellants' final challenge to the default judgment states that the district court entered the judgment without proper notice to appellants. This argument is meritless. *Rule 55(b)(2) of the federal rules of civil procedure* states that "[i]f the party against whom judgment by default is sought has appeared in the action, he (or, if appearing by representative, his representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application." The SEC filed a motion for default judgment on March 10 and hand delivered a copy of the motion to counsel for appellants that day. On March 14, the SEC filed an application for the entry of an order of permanent injunction by default and again served a copy of its motion on counsel for appellants that day. The district court did not enter its order of permanent injunction by default against appellants until March 20. Rule 55(b)(2) does not require the district court to hold either an evidentiary hearing or oral argument on a motion for a default judgment. *Thomas v. United States*, 531 F.2d 746, 748 (5th Cir. 1976). Appellants had sufficient notice of the possibility that a default judgment would be entered against them and their contention is rejected.

### III. Contempt Judgment

■ As the Supreme Court stated in *Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450, 31 S.Ct. 492, 501, 55 L.Ed. 797 (1911), "the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law." *See Roadway Express, Inc. v. Piper, supra*, 447 U.S. at 764, 100 S.Ct. at 2463. A party commits contempt when he violates a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order. *See Jim Walter Resources, Inc. v. International Union, UMW*, 609 F.2d 165, 168 (5th Cir. 1980); *In re Baum*, 606 F.2d 592, 593 (5th Cir. 1980). In this case, the district court's judgment was an adjudication of civil contempt. The purpose of this order was to compel appellants to comply with the court's previous orders requiring them to submit to discovery by the SEC rather than to vindicate the court's authority without regard for the contemnor's future compliance with the court's orders. *See Smith v. Sullivan*, 611 F.2d 1050, 1053 (5th Cir. 1980). The order itself stated that appellants could purge their contempt, presumably by following the district court's prior orders, and we conclude that the contempt judgment entered by the district court was civil in nature. Consequently, we must examine the validity of the district court's order underlying its contempt judgment because a judgment of civil contempt can not stand if the basis for the judgment is erroneous.

*ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1356 (5th Cir. 1978).

Appellants contend that the district court's contempt judgment should be reversed because the district court's factual findings are clearly erroneous and the district court abused its discretion in holding them in contempt. Finally, appellants argue that their refusal to submit to discovery was based upon a valid claim of privilege and the advice of counsel. We can not accept these contentions.

■■■■ While the district court entered separate findings of fact in connection with its contempt judgment,[6] appellants' argument here is the same as that in regard to the default judgment—that there is nothing in the record to support the finding that appellants received notice of the different depositions and hearings they were required to attend. We have already rejected that argument in connection with our discussion of the default judgment and, for the reasons stated above, we also reject it here. The district court also did not abuse its discretion. Appellants' persistent refusal to comply with the district court's orders throughout this litigation justified the district court's imposition of this sanction. For the reasons stated above, we also reject appellants' argument that they validly invoked their fifth amendment privilege before the district court. Finally, we reject appellants' contention that reliance upon the advice of counsel constitutes an excuse for their refusal to obey a valid court order. Reliance upon advice of counsel may be considered in mitigation of the sanction but does not constitute a defense to contempt of court. *United States v. Seavers*, 472 F.2d 607, 611 (6th Cir. 1973); *In re Door*, 195 F.2d 766, 770 & n. 6 (D.C. Cir. 1952); *United States v. Goldfarb*, 167 F.2d 735, 735 (2d Cir. 1948) (per curiam); *Eustace v. Lynch*,

80 F.2d 652, 656 (9th Cir. 1935); *Spangler v. Pasadena City Board of Education*, 384 F.Supp. 846, 849–50 (C.D.Cal.1974), *vacated as moot*, 537 F.2d 1031 (9th Cir. 1976); *id.* (cases cited); *Theriault v. Carlson*, 353 F.Supp. 1061, 1066 n. 2 (N.D.Ga.1973), *rev'd on other grounds*, 495 F.2d 390 (5th Cir.), *cert. denied*, 419 U.S. 1003, 95 S.Ct. 323, 42 L.Ed.2d 279 (1974).

The judgments of the district court are AFFIRMED.

---

6. The opinion entered by the district court on March 20 contained factual findings and legal conclusions in connection with the court's entry of a permanent injunction by default judgment. *SEC v. First Financial Group of Texas*, No. H–79–1772 slip op. at 3–5 (S.D.Tex., March 20, 1980). Record on Appeal, Vol. IV at 550–52; *id.* at 553–55. Contrary to appellants' contention, this opinion was not entered in connection with the district court's contempt order, issued on March 12. The district court issued a separate opinion in connection with that order. *SEC v. First Financial Group of Texas, Inc.*, No. H–79–1772 (S.D.Tex., March 12, 1980). Record on Appeal, Vol. IV, at 539–41.